# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEEANN JOY COLEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-17-410-BMJ |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Leeann Joy Coleman, seeks judicial review of the Social Security Administration's denial of her applications for disability insurance benefits (DIB) and supplemental security income (SSI). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 14], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.   **Procedural Background**

On November 30, 2015, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff was not disabled and, therefore, not entitled to DIB or SSI. AR 12-24. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-3. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. §§ 404.1520, 416.920. Following this process, the ALJ first determined that Plaintiff meets the insured status requirements for DIB through December 31, 2018, and has not engaged in substantial gainful activity since July 7, 2013, her alleged onset date. AR 14.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: morbid obesity, asthma, diabetes mellitus, essential hypertension, cardiomyopathies status post congestive heart failure, obstructive sleep apnea, degenerative disc disease, pulmonary edema, major depressive disorder, and panic disorder without agoraphobia. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 15-18.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that:

> [Plaintiff can] lift and carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] cannot climb ladders, ropes or scaffolds. [Plaintiff] can occasionally reach overhead. [Plaintiff] is to avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation. [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive tasks. [Plaintiff] can respond appropriately to supervisors, co-workers, and usual work situations, but have occasional contact with the general public.

*Id.* at 19.

At step four, the ALJ determined Plaintiff is unable to perform any past relevant work. *Id.* at 22. At step five, relying on a vocational expert's (VE) testimony, the ALJ found Plaintiff can perform other work existing in significant numbers in the national economy. *Id.* at 23-24.

Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. *Id*. at 24.

## III. Claims Presented for Judicial Review

Plaintiff alleges the ALJ erred in: (1) rejecting the consultative examiner's opinion that Plaintiff's mental impairments would "likely interfere[] with her ability to adapt to a competitive work environment"; and (2) failing to consider the impact of Plaintiff's severe obesity in the RFC assessment. Pl.'s Br. at 7-15.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

## V. Analysis

### A. The Consultative Examiner's Opinion

A consultative psychologist, Dr. Stephanie C. Crall, Ph.D., examined Plaintiff once, at the SSA's request. AR 339. Under "General Impressions," Dr. Crall opined that Plaintiff could perform simple and some complex tasks; however, "the presence of depression, anxiety, and physical difficulties likely interfered with her ability to adapt to a competitive work environment."

3

*Id.* at 341. Dr. Crall explained that Plaintiff "was not participating in any mental health treatment" and her "ability to adapt to a competitive work environment if she was receiving appropriate mental health treatment was unknown." *Id.* The ALJ gave Dr. Crall's latter opinion – that Plaintiff's impairments "likely interfered with her ability to adapt to a competitive work environment" – "little weight, as it is inconsistent with medical records outlined [in the ALJ's opinion]." *Id.* at 22. The ALJ further noted that "[Dr. Crall's] opinion itself indicates that [Plaintiff] was not currently receiving mental health treatment and would potentially experience improvement." *Id.*

Plaintiff claims the ALJ committed legal error because his reasoning "was not based on specific and legitimate reasons and failed to adequately address various relevant factors." Pl.'s Br. at 9. Relatedly, Plaintiff alleges "the ALJ failed to identify any specific inconsistencies that he relied upon that would permit the Court to adequately review his reasoning." *Id.* at 9-10. Plaintiff also claims the ALJ "represented an overly optimistic interpretation of the doctor's actual statement" regarding whether future treatment would have an effect on Plaintiff's ability to adapt to a competitive work environment. *Id.* at 10. Finally, Plaintiff alleges the ALJ ignored other supportive evidence. *Id.* at 10-11. The Court finds no grounds for reversal in these arguments.

As an examining consultant, Dr. Crall's opinion was generally entitled to less weight than a treating physician's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Nevertheless, the ALJ was required to properly consider Dr. Crall's opinion and provide legitimate reasons for discounting it. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Some factors the ALJ should have considered include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the

opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quotation omitted). However, so long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The Court first rejects Plaintiff's allegations that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Crall's opinion, failed to adequately address "various relevant factors," and did not identify "specific inconsistencies." Pl.'s Br. at 9. The ALJ discussed the medical treatment evidence, AR 20-21, and then found that Dr. Crall's opinion was inconsistent with the "medical records outlined above." *Id.* at 22. He also recognized that Dr. Crall was the consultative psychologist. *Id.* These are legitimate factors to consider, *see supra, citing Krauser*'s factors (1), (3), (4), and the fact that the ALJ did not discuss every factor is not grounds for reversal. *See Oldham*, 509 F.3d at 1258.

As for the ALJ's alleged failure to pinpoint "specific inconsistencies," he noted that Plaintiff received no mental health treatment and took no medications for her mental impairments. AR 20. He then cited numerous medical records indicating Plaintiff had "not exhibited signs of [mental limitations]." *Id.* (citing "2F/5, 19; 3F/23, 25; 8F/3" (AR 289, 303, 326, 328, 374)). This certainly gives the Court sufficient details so as to accord the ALJ's opinion meaningful review.

Reversal is also not warranted on Plaintiff's claim that when the ALJ said Dr. Crall's opinion indicated that Plaintiff "would potentially experience improvement" with mental health treatment, that he was giving an "overly optimistic interpretation." Pl.'s Br. at 10. Dr. Crall said it was "unknown" if Plaintiff would improve. AR 341. It is not unreasonable to interpret this

5

statement as suggesting that Plaintiff "potentially" could improve. And, even if the ALJ improperly interpreted the examiner's statement, he otherwise gave specific and legitimate reasons to reject the opinion. *See supra* at 5. As such, no reversible error occurred.

Finally, the Court finds no merit in Plaintiff's suggestion that the ALJ ignored evidence. According to Plaintiff, the ALJ failed to note Dr. Crall's findings that Plaintiff showed "significant depressive and panic symptoms," apathy towards life and death, social isolation, difficulty with math, and a sometimes "depressed and tearful appearance." Pl.'s Br. at 10. The ALJ also allegedly ignored that Plaintiff said she lost her last job because she could not "keep up" and that she was disorganized during a disability interview. *Id.* at 10-11. But the ALJ stated he considered all the evidence, and the Court "take[s] the ALJ at his word, unless shown otherwise." *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017). Further, an ALJ need not mention every piece of evidence, only "the uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); *see also Watts*, 705 F. App'x at 762 ("While the 'record must demonstrate the ALJ considered all of the evidence,' there is no requirement an ALJ 'discuss every piece of evidence.'" (citation omitted)). With only Dr. Crall's findings in the record, and the State agency psychologist's review of Dr. Crall's findings, AR 89, 92-94, the ALJ determined that Plaintiff has severe major depressive disorder and panic disorder without agoraphobia. *Id.* at 14. Thus, the ALJ clearly did not reject the evidence above and thus had no duty to single out every supportive statement in the record. *See Watts*, 705 F. App'x at 762 ("there is no requirement the ALJ reference everything in the administrative record, particularly when the evidence supports the ALJ's conclusion").

In sum, the Court notes that Plaintiff did not initially seek disability based on any mental impairment, AR 218, and she testified that she did not take mental health medications and had not

6

had any mental health counseling since she was young. *Id.* at 41. Indeed, even when Plaintiff testified that she did not "think [she] could manage the expectations of [an] employer" to be "efficient and task-oriented," she based it on her need to "lay down and take many, many breaks." *Id.* at 59. Plaintiff spent no time describing any functional limitations she allegedly suffered based on a mental impairment. *Id.* at 38-59. The ALJ discussed Plaintiff's testimony and reviewed the medical evidence, and the Court finds no error in his rejection of Dr. Crall's opinion that Plaintiff's limitations "likely" prevented her from adapting to a competitive work environment.

B. **Plaintiff's Severe Obesity**

Plaintiff next argues that the ALJ committed reversible error in failing to consider the impact of her severe obesity on her RFC. *See* Pl.'s Br. at 12-15. The Court again finds no reversible error.

At step two, the ALJ found that Plaintiff suffers from severe obesity, AR 14, and an ALJ should consider the effects of severe obesity when assessing a claimant's RFC. *See* SSR 02–1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). However, an ALJ is not required to "note the absence of any evidence that [a plaintiff's] obesity resulted in additional functional limitations or exacerbated any other impairment" as he discusses "each piece of evidence . . . in formulating [a plaintiff's] RFC." *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015).

Here, a State agency physician opined that due to her severe obesity and congestive heart failure, Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could only occasionally crouch and crawl, and could perform unlimited balancing and stooping, and frequent kneeling. AR 91, 105. The ALJ not only adopted some of these limitations, but he determined that Plaintiff was even *more* limited, finding she could only "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl" and could never "climb ladders, ropes, or

7

scaffolds." *Id.* at 19. And, notably, Plaintiff did not initially seek disability based on obesity, *id.* at 218, and did not testify regarding how her obesity affected her physical activities. *Id.* at 38-59. In fact, Plaintiff offers this Court no examples of omitted functional limitations that are necessary in light of her severe obesity. Under such circumstances, the Court finds no reversible error in the ALJ's failure to provide a specific discussion of her severe obesity during the RFC assessment stage. *See Smith*, 625 F. App'x at 899 (finding no reversible error where the ALJ limited plaintiff to light work with no more than occasional crouching and kneeling and plaintiff failed to show her severe obesity resulted in any further limitations); *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (rejecting plaintiff's claim the ALJ erred in finding her obesity severe at step two but not "including it in [the] RFC" in part because plaintiff failed to show her obesity limitations were inconsistent with the RFC restrictions); *Bryant v. Berryhill*, No. CIV-15-1151-HE, 2017 WL 401263, at *1, *6 (W.D. Okla. Jan. 30, 2017) (unpublished district court order) (rejecting plaintiff's claim the ALJ's obesity consideration was inadequate where plaintiff did not identify any functional limitations that the ALJ should have included in the RFC based on her obesity).

## IV.  Conclusion

The ALJ properly rejected the consultative examiner's opinion regarding Plaintiff's likely inability to adapt to competitive work environments and the Court finds no reversible error in the ALJ's consideration of Plaintiff's severe obesity.

Accordingly, the decision of the Commissioner is AFFIRMED.

ENTERED this 18th day of January, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE